# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS MENDEZ REYES,<br><br>            Plaintiff,<br><br>   v.<br><br>ANDREW M. SAUL,[1] Commissioner of Social Security,<br><br>            Defendant. | Case No. CV 18-7748 AS<br><br>**MEMORANDUM OPINION**<br><br>**AND ORDER OF REMAND** |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), this matter is remanded for further administrative action consistent with this Opinion.

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for his predecessor. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

| | |
|---|---|
| 1 | **PROCEEDINGS** |
| 2 | |
| 3 | On September 6, 2018, Plaintiff filed a Complaint seeking |
| 4 | review of the Commissioner's denial of Plaintiff's applications |
| 5 | for disability insurance benefits ("DIB") and supplemental security |
| 6 | income ("SSI"). (Dkt. No. 1). On March 4, 2019, Defendant filed |
| 7 | an Answer and the Administrative Record ("AR"). (Dkt. Nos. 16- |
| 8 | 17). On June 3, 2019, the parties filed a joint stipulation setting |
| 9 | forth their respective positions regarding Plaintiff's claims. |
| 10 | ("Joint Stip.," Dkt. No. 18). The parties have consented to proceed |
| 11 | before the undersigned United States Magistrate Judge. (Dkt. Nos. |
| 12 | 9, 22-23). |
| 13 | |
| 14 | **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION** |
| 15 | |
| 16 | On April 1, 2015, Plaintiff, formerly employed as a |
| 17 | caregiver/companion and a psychiatric technician, constructively |
| 18 | filed applications for DIB and SSI alleging a disability onset |
| 19 | date of May 1, 2007. (AR 202-18, 267). Plaintiff's applications |
| 20 | were denied initially on August 27, 2015, (AR 118, 145-49), and |
| 21 | on reconsideration on December 8, 2015. (AR 141-42, 151-55). |
| 22 | |
| 23 | On June 15, 2017, Administrative Law Judge Henry Koltys |
| 24 | ("ALJ") heard testimony from Plaintiff, who was represented by |
| 25 | counsel, and vocational expert ("VE") Sharon Spaventa. (See AR |
| 26 | 73-100). At the hearing, upon the ALJ's suggestion, Plaintiff |
| 27 | amended his alleged onset date to "October 2014." (AR 79-80). On |
| 28 | October 3, 2017, the ALJ issued a decision acknowledging |

Plaintiff's amended onset date as October 1, 2014, and denying Plaintiff's application upon concluding that Plaintiff has not been disabled since that date. (See AR 52-57).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2014, the amended alleged onset date. (AR 54). At step two, the ALJ found that Plaintiff's diabetes mellitus, hypertension, and history of prostate cancer are severe impairments.[2] (Id.). At step three, the ALJ determined that Plaintiff's impairments do not meet or equal a listing found in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR 55).

Next, before proceeding to step four, the ALJ found that Plaintiff has the Residual Functional Capacity ("RFC")[3] to perform "medium work," except that he can "frequently climb ramps/stairs; frequently crawl [or] kneel; [and] occasionally stoop, crouch, climb ladders, ropes, [and] scaffolds." (Id.). At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a companion and psychiatric technician. (AR 57).

---

[2] The ALJ found Plaintiff's alleged diagnosis of myasthenia gravis to be a non-severe impairment. (AR 54-55).

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

3

Accordingly, the ALJ concluded that Plaintiff is not disabled. (Id.).

Following the ALJ's decision, Plaintiff submitted a request for review to the Appeals Council (AR 198-200), along with a supporting brief from his attorney (AR 337), and additional medical evidence (AR 25-47, 62-63). On July 12, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (See AR 1-4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F. 3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's]

4

conclusion.' " Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of support evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting the plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that (1) the ALJ erred in evaluating the medical evidence; (2) the ALJ erred in assessing Plaintiff's subjective symptoms; and (3) the ALJ's decision is not supported by substantial evidence in light of additional records submitted to the Appeals Council. (See Joint Stip. at 3-23).

**DISCUSSION**

After consideration of the record as a whole, for the reasons discussed below, it is recommended that the decision be remanded for further consideration because the ALJ erred in discrediting Plaintiff's subjective symptom testimony. Because the case warrants remand on this basis, Plaintiff's other contentions need not be addressed here.[4]

---

[4] One of Plaintiff's contentions, pertaining to the ALJ's assessment of the medical evidence (Issue 1), is that the ALJ erred by not considering the records that pre-dated Plaintiff's amended alleged onset date of October 1, 2014. (Joint Stip. at 6-7). While arguing that these records were relevant because they shed light on the post-2014 period, Plaintiff also states:

> Should the Commissioner argue that these records are irrelevant because they pre-date the alleged onset date, plaintiff contends any amendment of the onset date was not done voluntarily. [Plaintiff] did not knowingly and voluntarily amend his onset date. There is no indication in the record that he understood the ramifications of amending his onset date, nor was there great discussion of his earnings, and whether they actually satisfied the legal standard for SGA.

(Id. at 6 (citing AR 79)). Because Plaintiff raises this argument only briefly, without further support, and merely as an alternative argument within a sub-issue, the Court need not address it here based on the Court's determination that the case should be remanded on a separate issue.

Nevertheless, the Court notes that Plaintiff was present and represented by counsel at the hearing when his counsel agreed with the ALJ that the onset date should be amended from 2007 to 2014, and nothing in the record suggests coercion or deception. (See AR 79-80); see also Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010) (absent a showing of coercion or deception, plaintiff is bound by his agreement and the agreement of his representative to amend the disability onset date) (citing 20 C.F.R. § 416.1510(a)(3)(4)); Town of N. Bonneville v. Callaway, 10 F.3d 1505, 1509 (9th Cir. 1993) ("In the absence of egregious circumstances, parties are generally

6

**A.    Legal Standard for Assessing Subjective Symptom Testimony**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the

---

bound by the admissions of their attorney, including oral admissions."). Plaintiff also does not point to any evidence to dispute that in 2013 he earned $22,930.16 in his job as a companion at Help Unlimited Inc. (See AR 79, 242, 245-46). Plaintiff's counsel agreed with the ALJ's suggestion to amend the onset date because these earnings qualified the job as substantial gainful activity ("SGA") in 2013, under agency regulations. (AR 79-80); see 20 C.F.R. § 404.1574; Social Security Administration, "Substantial Gainful Activity," https://www.ssa.gov/oact/cola/sga.html (last visited July 1, 2019).

7

claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**B. Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (AR 56). However, the ALJ offered little explanation for this finding, and failed to clarify which of Plaintiff's statements he found credible or not credible and why. See Brown-Hunter, 806 F.3d at 493 ("The ALJ . . . failed to identify specifically which of Brown-Hunter's statements she found not credible and why."); Knape v. Berryhill, 734 F. App'x 500, 501 (9th Cir. 2018) ("The ALJ failed to identify the parts of Knape's mental health symptom testimony he found not credible and failed to provide any links to the record."); Fritz v. Berryhill, 685 F. App'x 585, 586 (9th Cir. 2017) ("[T]he ALJ did not identify what testimony was not credible and what evidence undermined Fritz's complaints.").

The ALJ's credibility determination was partly based on Plaintiff's daily activities. An ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. Here, the ALJ specifically referenced Plaintiff's testimony about caring for his son who has bipolar disorder as a daily activity that undermined the credibility of his symptom testimony, (AR 56), stating, "[Plaintiff] said that he takes him to appointments and cooks for him. He said that he does basketball and golfing with him," and concluding, without further explanation, that "[t]hese activities are not consistent with [Plaintiff's] allegations of disability." (Id.).

10

The ALJ's account of Plaintiff's activities is misleading. For example, although Plaintiff testified that he and his son "play basketball," he clarified this by explaining: "We don't play, but we'll be shooting a round. We shoot around baskets. He does. I throw him the ball. That's all." (AR 88). When asked if he can dribble the ball, Plaintiff replied: "No, no. I just throw them (sic) the ball. He wants to be a basketball player, so I stand on the court and throw him the ball. That's about it." (AR 89). As for golfing, Plaintiff testified that he "take[s his] son golfing," and "teach[es] him the fundamentals." (AR 89). He stated, however, that he cannot swing a golf club. (Id.). He instead teaches his son "[j]ust the poses and how to grab, the grip." (Id.). Plaintiff also testified that he cooks for his son, but he clarified that he makes only "Breakfast, eggs, toast." (AR 88).

While the ALJ correctly noted that Plaintiff testified that he takes his son to appointments (AR 56, 88), Plaintiff did not indicate whether he drove to appointments. The record suggests that Plaintiff may have been unable to drive or read due to vision impairment caused by myasthenia gravis, a chronic autoimmune neuromuscular disease, during at least some part of the relevant period. (See AR 768 (January 2016 note from Dr. Neda Heidari, M.D., stating that Plaintiff was "unable to work and drive"); see also AR 84, 86-87, 318 (January 2016 disability report, stating: "Cannot read and vision is blurry. No longer allowed to drive, per doctors orders.")).[5] At the hearing on June 15, 2017, Plaintiff

---

[5] Dr. Heidari is a neurologist who has treated Plaintiff for myasthenia gravis. (AR 82-83, 95-96). Plaintiff testified at

11

testified that his myasthenia gravis was being treated with medication, along with infusions three times per month, but he stated that the medication only "sometimes" helped the vision problem. (AR 87).

---

the hearing that he had been seeing Dr. Heidari for about three years, and saw her every three or four months. (AR 96). The ALJ discredited Dr. Heidari's opinion because there was no support or reasoning provided for it. (AR 56). It appears that none of Dr. Heidari's treatment records were part of the record when the ALJ issued his decision. For that reason, the ALJ also found that the evidence failed to establish a medically determinable impairment of myasthenia gravis. (AR 54-55). However, Plaintiff later submitted additional records to the Appeals Council, including medical records documenting IV infusion treatment by Dr. Heidari in November 2017 and scheduling follow-up treatment (AR 29-37, 40-43, 46, 62-63); a brief, handwritten note from Dr. Heidari stating that Plaintiff "is unable to work due to his neuromuscular condition & dependency on his IV meds" (AR 45); and several pages of general information about myasthenia gravis, such as how it causes muscle weakness and impairs the functioning of eyes and limbs and the ability to swallow, among other things (AR 25-28, 38-39, 44, 47). The Appeals Council reviewed these documents and determined that most of them were too recent to relate to the alleged period of disability, and a consideration of the other documents did not raise a reasonable probability that they would change the ALJ's unfavorable decision. (AR 1-2).

Although these additional documents do not specifically illuminate the nature, extent, or duration of Plaintiff's condition and treatments, they are at least consistent with Plaintiff's testimony that he was diagnosed with myasthenia gravis; that he has experienced impaired eyesight, arm and leg weakness, difficulty swallowing, and other symptoms; and that Dr. Heidari has been treating him with medication and IV infusions. (AR 81-87, 94-96). This Court considers these records in reviewing the Commissioner's decision. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

Aside from citing to Plaintiff's daily activities, the ALJ also found that Plaintiff's medical records did not "show the types of serious symptoms and dysfunction that would be expected were [Plaintiff] as limited as alleged." (AR 56). The ALJ primarily found that Plaintiff's conservative treatment with medications was inconsistent with Plaintiff's allegations of disability, noting, for example, that Plaintiff "was not referred to an orthopedic surgeon for his back pain and was solely managed with pain medications, suggesting that this conservative treatment was sufficient in controlling [Plaintiff's] symptoms." (Id.).

However, the ALJ did not address the extent to which other treatments may not have eliminated certain persistent, disruptive symptoms. Most notably, the ALJ did not discuss Plaintiff's urinary incontinence, a condition that has apparently persisted, without improvement, since Plaintiff's prostate surgery in 2007. (See AR 80, 83-84, 341, 368, 466-70, 553, 599, 633, 674, 686, 689-90). Plaintiff testified that his urinary incontinence requires him to use about ten diapers a day. (AR 84). He has also stated that he leaks urine so much that he "put[s] on 2 Depends [adult diapers, and] in 2 [hours] both are soak[ed]." (AR 261 (April 2015 questionnaire)). He reported that he needed to change his diaper "every one and a half hours." (AR 292 (November 2015 disability report)). Plaintiff also stated, that he needs to use the bathroom every fifteen minutes. (AR 263 (April 2015 questionnaire), 296 (November 2015 disability report)). Plaintiff testified that he cannot lift anything over ten pounds "[w]ithout leaking [urine]." (AR 94).

13

Plaintiff reported that his urinary incontinence was the primary reason why he stopped working at his part-time companion job in October 2014. (See AR 253 (reason why he stopped working: "Part Time Job unable to hold urine")). He testified that he just "couldn't do [the job] no more," and explained that he was "working only two hours" and "sometimes [he] didn't even come in because [he] urinated on [him]self."[6] (AR 79). He stated that his urine "just kept on flowing." (AR 83). Plaintiff's medical records confirm that Plaintiff suffered from urinary incontinence and wore diapers. (See, e.g., AR 338, 341, 380, 553, 599, 633, 674, 686, 689-90). It does not appear from the record that Plaintiff received any treatment to alleviate this condition. Plaintiff testified that the only related treatment he receives is for "urine infections." (AR 84).

The ALJ did not discuss Plaintiff's urinary incontinence in the decision, aside from briefly mentioning that Plaintiff had

---

[6] Plaintiff presumably meant that he worked only two hours per day, but the record is unclear. The transcript reads: "I was working only two hours [PHONETIC], and sometimes I didn't even come in because I urinated on myself." (AR 79) (brackets in original).

The companion job at Help Unlimited Inc. that Plaintiff left in 2014 was part-time but it qualified as SGA under agency regulations because Plaintiff earned $22,930.16 in 2013. (See AR 79, 242, 245-46); see also 20 C.F.R. § 404.1574; Social Security Administration, "Substantial Gainful Activity," https://www.ssa.gov/oact/cola/sga.html (last visited July 1, 2019). Plaintiff appears to have first worked for Help Unlimited Inc. in 2008 – the year after his 2007 prostate surgery (AR 80) – but 2013 was the only year in which he received SGA-level earnings. (AR 242, 245-46). In other years he earned considerably less: $566 (2008), $0 (2009), $8,250 (2010), $5,524 (2011), $10,457 (2012), and $5,162.94 (2014). (AR 245-46).

14

complained of the condition and his primary physician had noted it. (AR 55-56). Moreover, none of the daily activities or medical evidence that the ALJ relied on to discredit Plaintiff's subjective symptom testimony are inconsistent with Plaintiff's statements about incontinence. Despite this, the ALJ does not appear to have accounted for any incontinence-related problems when determining Plaintiff's RFC, or asked the VE at the hearing whether Plaintiff's ability to work would be limited by any incontinence-related problems. (AR 55, 98-99). As noted above, based on Plaintiff's statements, such problems included the need to use the bathroom every fifteen minutes and/or change his diaper every hour and a half, and an inability to lift anything over ten pounds without leaking urine. (See AR 84, 92, 264, 292, 296).

The ALJ did not provide any explanation for failing to take Plaintiff's statements about his incontinence into account in assessing Plaintiff's ability to work. The ALJ instead simply limited Plaintiff to "medium work," with the ability to "frequently climb ramps/stairs; frequently crawl [or] kneel; [and] occasionally stoop, crouch, climb ladders, ropes, [and] scaffolds." (AR 55). The ALJ then relied on the VE's testimony to conclude that Plaintiff, with this RFC, could work in his two past relevant jobs (AR 57, 99) – one of which predated Plaintiff's incontinence, and the other of which lasted only a year with SGA-level earnings, and allegedly ended due to incontinence. (See AR 79-80, 242-245-46, 253-54).

In sum, the ALJ rejected Plaintiff's subjective statements as inconsistent with his daily activities and conservative treatment, but failed to support this finding with clear and convincing reasons that were supported by substantial evidence in the record.

**C.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, 211 F.3d at 1179-81. Because outstanding issues must be resolved before a determination of disability can be made, and "the record as a whole creates serious doubt as to whether [Plaintiff], in fact, is disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

**ORDER**

For the reasons discussed above, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 17, 2019.

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE